IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Z-AXIS TECH SOLUTIONS, INC. and SRINIVAS NOMULA, <br><br> Plaintiffs, <br><br> v. <br><br> RICHMOND CAPITAL GROUP, LLC and CAP CALL, LLC, <br><br> Defendants. | Civil Action: |

## COMPLAINT

Plaintiffs Z-Axis Tech Solutions, Inc. and Srinivas Nomula, for their complaint against Defendants Richmond Capital Group, LLC and Cap Call, LLC, by and through their attorneys Archer & Greiner, P.C., allege as follows:

### INTRODUCTION

1.      This arises from Defendants' misappropriation of Z-Axis's funds.

2.      Indeed, Z-Axis desired short-term funding of $400,000 in exchange for the sale of certain of its future receivables.

3.      Defendant Richmond Capital brokered the deal, which was to result in $400,000 short-term funding to Plaintiff in exchange for the sale of $559,600 worth of Z-Axis's future receivables.

4.      With Richmond Capital as broker, Z-Axis was to receive $200,000 from Defendant Cap Call, and $200,000 from non-party Capital Advance Services LLC, for a total of $400,000.

5.     Instead, Defendants knowingly and intentionally misappropriated $60,000 of Z-Axis's funds, depositing only $340,000 with Z-Axis, yet Defendants and non-party Capital Advance continue to regularly withdraw monies from Z-Axis's bank account with the threat of entry of confessions of judgment if disallowed to do so.

6.     Defendants have admitted that they are holding the $60,000 illegitimately and had continued to promise the return of that $60,000 from on or about March 27, 2017 to throughout much of April 2017. In May 2017, Defendants reversed-course and refused to return Z-Axis's $60,000.

7.     Because of Defendants' fraud, Z-Axis seeks, among other remedies, rescission of the purported agreement with Cap Call, which would require the return of all payments including the $79,800 that Z-Axis is and will be paying to Defendants for interest and other fees.

## THE PARTIES

8.     The foregoing paragraphs are incorporated as if set out at length herein.

9.     Plaintiff Z-Axis Tech Solutions, Inc. is a California corporation with its principal place of business at 1754 Technology Drive #224, San Jose, California 95110.

10.    Plaintiff Srinivas Nomula is the owner of Z-Axis and a citizen of New Jersey, maintaining a residence at 2216 Edward Stec Bldv., Edison, New Jersey 08837. The purported contract documents required Srinivas Nomula to guaranty the short-term loans.

11.    Defendant Richmond Capital Group, LLC is a New York limited liability company with an office address of 125 Maiden Lane, Suite 501, New York, NY 10038 and a service of process address of 8212 Third Avenue, Brooklyn, New York 11209 c/o Lawrence P. Giardina, Esq., and upon information and belief its members are citizens of New York.

12.     Defendant Cap Call, LLC (a/k/a CapCall, LLC) is a Delaware limited liability company with an office address of 122 East 42nd Street, Suite 2112, New York, New York 10168 and a service of process address of One Commerce Plaza, 99 Washington Avenue, Suite 1008, Albany, New York 12260 c/o Allstate Corporate Services Corp., and upon information and belief its members are citizens of New York.

## JURISDICTION AND VENUE

13.     The foregoing paragraphs are incorporated as if set out at length herein.

14.     The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiffs are citizens of California and New Jersey whereas Defendants are citizens of New York, and the matter in controversy exceeds the sum of $75,000 exclusive of interests or costs.

15.     The Court has personal jurisdiction over Defendants on the ground of general jurisdiction because Defendants maintain a continuous presence within the New York, including a substantial business office, and are conducting business in New York. The Court also has personal jurisdiction over Defendant Cap Call via the subject contract proposed by that Defendant.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 and via the contract proposed by Defendant Cap Call.

## FACTS

17.     The foregoing paragraphs are incorporated as if set out at length herein.

18.     On or about March 27, 2017, Z-Axis sought out short-term funding.

19.     On or about March 27, 2017, Defendant Richmond Capital brokered a $400,000 short-term loan for Z-Axis.

20.     The $400,000 loan was to be financed by two lenders. Defendant Cap Call was to finance $200,000 in exchange for $279,000 of Z-Axis's future receivables. Capital Advance was to finance $200,000 in exchange for $279,000 of Z-Axis's future receivables.

21.     Richmond Capital was Z-Axis's broker and contact for each $200,000 loan.

22.     Although Z-Axis was to receive $400,000 in total, $60,000 was wrongly and deceptively misappropriated by Defendants.

23.     When Z-Axis realized it had been deprived of $60,000, Z-Axis made immediate and regular contact with the broker Richmond Capital for the return of the $60,000 to Z-Axis.

24.     During each contact, the Richmond Capital representative, Mimi Parker, represented and assured Z-Axis that the $60,000 would be returned to Z-Axis.

25.     On March 29, 2017, Z-Axis realized that $40,000 was misappropriated by Defendants on one of the $200,000 loans and immediately contacted Richmond Capital to ensure that the $40,000 was returned to Z-Axis.

26.     On that same day, March 29, 2017, Richmond Capital responded as follows: "I completely understand and Like i [sic] told Srinin we are extremely sorry about the mess. We had a mishap with the bank - money was rewired and fees were ordered to [be] refunded." These assurances by Richmond capital were false and intended to be relied on by Z-Axis so that Defendants could retain the misappropriated funds, and continue to have improper ACH withdrawals from the account.

27.     Without any resolution by March 31, 2017, Z-Axis contacted Richmond Capital again. At this point, the second $200,000 loan went through but another $20,000 was misappropriated by Defendants. Accordingly, Z-Axis advised that the $60,000 misappropriated by Defendants must be returned.

28.     Richmond Capital responded: "It did not hit our processor yet, as soon as it does we can sent it back please be patient." These representations and assurances by Richmond capital were false and intended to be relied on by Z-Axis so that Defendants could retain the misappropriated funds.

29.     There was still no resolution by April 3, 2017. Plaintiff advised that the $60,000 still had not been returned to Z-Axis. Z-Axis warned that it would stop the automatic payments from its bank that Defendants were receiving in exchange for what was supposed to be a $400,000 loan.

30.     Fearful that Z-Axis would stop the automatic payments, Richmond Capital responded: "Please do not stop the daily draws, its simply takes 5 days for the money to hit our processor for it to be returned, i [sic] understand its [sic] frustrating but stopping the daily debits will cause you to be in default for so your sake and my sake, lets wait for the refund." These assurances by Richmond Capital were false and intended to be relied on by Z-Axis so that Defendants could retain the misappropriated funds and continue to take monies from Z-Axis.

31.     Defendants continued the misrepresentations further into April 2017. On April 5, 2017, after speaking with Plaintiff, Mimi Parker from Richmond Capital stated she was "really sorry about this mess." Thinking that Z-Axis may apply for further funding through Richmond Capital, Richmond Capital attempted to get Z-Axis to relent in its efforts to retrieve its monies: "And if your [sic] going to take out more money anyways you might as well just take it with me and have the fee refunded. Because of this mess I will take care of you."

32.     Despite Defendants' original representations that a short-term loan of $400,000 would be provided in exchange for $559,600 of Z-Axis's future receivables, and despite the several representations after that purported loan transaction occurred, Defendants refused either

to return the $60,000 they misappropriated from Z-Axis or to undue the purported loan transactions.

## COUNT I

### FRAUDULENT MISREPRESENTATION

33.     The foregoing paragraphs are incorporated as if set out at length herein.

34.     As alleged above, Defendants made material and false representations with the intent to defraud Plaintiffs. While more fully alleged above, Defendants represented, among other things, that they would provide two $200,000 (totaling $400,000) loans in exchange for future receivables of $279,800 for each (totaling $559,600). Defendants intended that Plaintiffs rely on these representations.

35.     Plaintiffs reasonably relied on Defendants' material representations and pursued financing with Defendants to Plaintiffs' severe detriment.

36.     Plaintiffs have and continue to suffer damages as a result of that reasonable reliance.

## COUNT II

### NEGLIGENT MISREPRESENTATION

37.     The foregoing paragraphs are incorporated as if set out at length herein.

38.     Alternatively, as alleged above, Defendants carelessly imparted false and material representations with the intent that Plaintiffs rely thereon. While more fully alleged above, Defendants represented, among other things, that they would provide two $200,000 (totaling $400,000) loans in exchange for future receivables of $279,800 for each (totaling $559,600). Defendants intended that Plaintiffs rely on these representations.

39.     Plaintiffs reasonably relied on Defendants' material representations and pursued financing with Defendants to Plaintiffs' severe detriment.

40.     Plaintiffs have and continue to suffer damages as a result of that reasonable reliance.

## COUNT III

## BREACH OF CONTRACT

41.     The foregoing paragraphs are incorporated as if set out at length herein.

42.     Alternatively, as alleged above, Plaintiffs purportedly entered into multiple contracts with Defendants and Defendants breached same via actions, among others, that violate the covenant of good faith and fair dealing implicit in all contracts. More fully alleged above, Defendants agreed that two $200,000 loans would be provided in exchange for future receivables of $279,800 for each said loan, yet these Defendants failed to meet these and other requirements and damaged Plaintiffs as a result. These breaches caused and continue to cause damages to Plaintiffs.

## COUNT IV

## DECLARATORY JUDGMENT

43.     The foregoing paragraphs are incorporated as if set out at length herein.

44.     An actual case or controversy, justiciable by this Court, has arisen between Plaintiffs and Defendants concerning the enforceability and validity of a confession of judgment included by Defendant Cap Call with the loan paperwork.

45.     Defendant Cap Call's material breach of the $200,000 loan excused Z-Axis from performance under the loan.

46.     Any action taken by Z-Axis that Defendant Cap Call now deems a breach of the purported agreement between the parties cannot be deemed a breach because of Defendant Cap Call's initial material breach in not providing the $200,000 to Z-Axis as required by that agreement.

47.     As a result of the foregoing, Plaintiffs entitled to an order declaring that: (a) Z-Axis did not breach the agreement because Defendant Cap Call materially breached same from its inception; (b) because Z-Axis did not breach the agreement, Defendant Cap Call has no right under the agreement to file the confession of judgment; and (c) the confession of judgment is null and void.

WHEREFORE, Plaintiffs demands entry of judgment against Defendants for actual damages, exemplary and punitive damages, costs and injunctive relief; rejection/revocation of acceptance, or, in the alternative, rescission of the purported loan contracts; declaratory judgment; and any further relief this Court deems appropriate.

**ARCHER & GREINER, P.C.**
44 Wall Street, Suite 1285
New York, New York 10005
201-342-6000
ppapalia@archerlaw.com
jcontarino@archerlaw.com
*Attorneys for Plaintiffs*


By:  Patrick Papalia
     Josiah Contarino

Dated: May 25, 2017

116123436v2

8