UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ x

Z-AXIS TECH SOLUTIONS, INC., SRINIVAS
NOMULAS

                Plaintiffs,

     -against-

RICHMOND CAPITAL GROUP, LLC, CAP
CALL, LLC,

                Defendants.

------------------------------------ x

MEMORANDUM DECISION
AND ORDER

17 Civ. 3983 (GBD)

GEORGE B. DANIELS, United States District Judge:

Plaintiffs Z-Axis Tech Solutions, Inc. ("Z-Axis") and Srinivas Nomula, its principal, bring this action against Defendants Richmond Capital Group, LLC ("Richmond Capital") and Cap Call, LLC ("Cap Call") alleging fraudulent and negligent misrepresentation, and breach of contract involving a short-term loan. (Compl., ECF No. 1, ¶¶ 33–42.) Plaintiffs also seek a declaratory judgment that: (a) Cap Call's material breach of a $200,000 loan excused Z-Axis from performance, (b) since Z-Axis did not breach the agreement, Cap Call had no right to file a confession of judgment, and (c) the confession of judgment is null and void. (Compl. ¶ 47.)

Cap Call filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Cap Call's Mot. Summ. J., ECF No. 32.) Richmond Capital moved to dismiss the Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) for failure to meet the $75,000 amount in controversy requirement. (Richmond Capital's Mot. Dismiss ("Mot."), ECF No. 13-2, at 1.) Richmond Capital also moved to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). (*Id.*) Subsequently, Z-Axis cross-moved to amend the Complaint to add a deceptive business practice claim against Richmond Capital under New

1

York General Business Law § 349. (*See* Z-Axis Opp'n to Richmond Capital Mot. and Cross-Mot. to Amend ("Opp'n and Mot. to Amend"), ECF No. 36; Proposed First Am. Compl. ("FAC"), ECF No. 37-1, ¶¶ 60–67.)

Cap Call is no longer a party in this action pursuant to a stipulation of dismissal executed between Plaintiffs and Cap Call. (*See* Stipulation of Dismissal, ECF No. 51.) Thus, Cap Call's Rule 56 motion is moot.

Richmond Capital's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) is GRANTED. Given that this Court lacks jurisdiction to adjudicate the merits of this action, Richmond Capital's Rule 12(b)(6) motion is also moot.[1]

Plaintiffs' cross-motion to amend the Complaint is DENIED as any further amendment would be futile.

## I. LEGAL STANDARD

"Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010). The party invoking the benefit of federal jurisdiction bears the burden of establishing the existence of that jurisdiction. *Sharkey v. Quarantillo*, 541 F.3d 75, 82–83 (2d Cir. 2008) (internal citation omitted).

In deciding a motion to dismiss "pursuant to Rule 12(b)(1), . . . the Court must accept as true all material factual allegations in the complaint, but should refrain from drawing any

---

[1] "A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Magee v. Nassau County Med. Ctr.*, 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998) (citing *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990)).

2

inferences in favor of the party asserting jurisdiction." *People United for Children, Inc. v. City of New York*, 108 F. Supp. 2d 275, 283 (S.D.N.Y. 2000) (citing *Atl. Mut. Ins. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992)). "[U]nder Rule 12(b)(1), [a court is] permitted to rely on non-conclusory, non-hearsay statements outside the pleadings." *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013).

## II. THIS COURT LACKS SUBJECT MATTER JURISDICTION UNDER RULE 12(b)(1)

Federal courts are courts of limited jurisdiction, requiring a valid basis for subject matter jurisdiction over a party's claim in order for the court to properly adjudicate the case or controversy. *Gottlieb v. Carnival Corp.*, 436 F.3d 335, 337 (2d Cir. 2006). Subject matter jurisdiction in this action is based on diversity. Valid subject matter jurisdiction can be anchored in diversity jurisdiction when the plaintiffs and defendants are of diverse citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. It is undisputed that there is complete diversity amongst the parties in this case and the sole jurisdictional question is whether "the matter in controversy exceeds the sum or value of $75,000." *Id.*; (Mot. at 3–4.)[2]

Plaintiffs allege that Richmond Capital misrepresented that it would be providing funding to Z-Axis as a direct funder in a single transaction. (FAC ¶¶ 61–62.) Richmond Capital did not disclose that it would be acting instead as a broker and that the transaction involved brokerage and other fees. (*Id.* ¶¶ 63–65.) Plaintiffs allege that the deal was completed through two separate funders, and although Z-Axis was to receive $400,000 in total, "$60,000 was wrongly and deceptively misappropriated" by Richmond Capital as "brokerage fees." (*Id.* ¶ 27.) Plaintiffs

---

[2] Complete diversity of citizenship is met: Plaintiff Z-Axis is a California corporation; Plaintiff Nomula is a New Jersey resident; Defendant Richmond Capital is a New York limited liability company with an office in New York; and Defendant Cap Call is a Delaware limited liability company with an office in New York. (FAC ¶¶ 10–13.)

3

allege that once they realized that funds were missing, they contacted Richmond Capital on multiple occasions and were reassured that it was all a "mishap with the bank" and that the funds "were ordered to [be] refunded." (*Id.* ¶¶ 29–36.) The funds, however, were never returned; instead, Richmond Capital informed Plaintiffs that the funds were brokerage fees that were authorized by ACH Authorization forms signed by Z-Axis. (*Id.* ¶ 37.) Ultimately, Richmond Capital charged Z-Axis a total of $40,000 ($20,000 per transaction) in fees. (*Id.* ¶ 66.) In addition, one of the funders, Capital Advance, charged Z-Axis $19,999 as a "professional service fee." (*Id.*) Plaintiffs allege that "Richmond Capital employs these tactics in transactions with other companies it lulls into funding 'deals.'" (*Id.* ¶ 67.) At most, then, Plaintiffs' claims against Richmond Capital are for $59,999.[3] Without more, Plaintiffs cannot meet the $75,000 amount in controversy requirement. Plaintiffs attempt to make up the difference by asserting a claim for punitive damages in an unspecified amount.[4] In this effort, they fail.

---

[3] The $19,999 professional service fee was charged by Capital Advance, not Richmond Capital, so it is arguable whether Plaintiffs can recover that amount from Richmond Capital at all.

[4] In their opposition to Richmond Capital's motion to dismiss, Plaintiffs argued that the relief they seek exceeds the $75,000 threshold because, in addition to claiming the brokerage fees, they also seek (1) rescission of the Cap Call $200,000 loan agreement, (2) punitive damages, and (3) attorneys' fees. ("Opp'n and Mot. to Amend at 6–9.) In response to Cap Call's dismissal from this action, Richmond Capital submitted to this Court that Plaintiffs' inclusion of "rescission" and other amounts in an attempt to "bootstrap" damages against Cap Call to Richmond Capital "are rendered moot." (ECF No. 52, at 1.) Plaintiffs' response only focused on their demand for punitive damages and did not dispute Richmond Capital's contention that rescission damages no longer apply. (ECF No. 53, at 1.) Given that the loan agreement Plaintiffs are seeking to rescind is a contract between Cap Call and Z-Axis and that Cap Call is no longer a party to this action, Plaintiffs' rescission claim is moot. As for the inclusion of attorneys' fees, those fees "may be used to satisfy the amount in controversy only if they are recoverable *as a matter of right* pursuant to statute or contract." *Kimm v. KCC Trading, Inc.*, 449 F. App'x 85, 85–86 (2d Cir. 2012) (emphasis added). Plaintiffs' General Business Law § 349 claim does not help them for jurisdictional purposes because the entitlement to fees under Section 349 is discretionary and not a matter of right. *Riordan v. Nationwide Mut. Fire Ins.*, 977 F.2d 47, 54 (2d Cir. 1992) ("The fee award [under GBL § 349] is left to the discretion of the trial court in all circumstances[.]"). Furthermore, even assuming Section 349 provides for punitive damages beyond limited treble damages, Plaintiffs still fail to allege a "broader impact on consumers at large" as required. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995).

4

"A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994). There is a "rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Bernshteyn v. Feldman*, No. 04-cv-1774 (GEL), 2006 WL 2516514, at *2 (S.D.N.Y. Aug. 29, 2006) (citing *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999). Thus to "overcome this presumption, a party seeking to defeat jurisdiction must show to a 'legal certainty' that the amount recoverable does not meet the jurisdictional threshold." *Bernshteyn*, 2006 WL 2516514, at *2 (internal citation omitted). "Where the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings." *Tongkook,* 14 F.3d at 785.

"A good faith claim for punitive damages can be considered in determining the relevant amount in controversy." *Bernshteyn*, 2006 WL 2516514, at *5 (citing *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991); *see also Law Offices of Louis Venezia v. Swarth*, 164 F.3d 618 (2d Cir. 1998). "However, claims for punitive damages are reviewed with greater scrutiny than claims for actual damages when punitive damages serve to satisfy the jurisdictional requirement." *Bernshteyn*, 2006 WL 2516514, at *5 (citing *Zahn v. Int'l Paper Co.*, 469 F.2d 1033, 1034 n.1 (2d Cir. 1972). Notably, "[a] trial court is not compelled to accept a claim for punitive damages made for the purposes of conferring jurisdiction." *Career Initiatives Corp. v. Palmer*, 893 F. Supp. 295, 296 (S.D.N.Y. 1995). When the asserted amount in controversy is based on a cause of action created by state law, "federal courts must . . . look to state law to determine the nature and extent of the right to be enforced." *Horton v. Liberty Mut. Ins.*, 367 U.S. 348, 352–53 (1961).

Under New York law, "punitive damages are not available in an ordinary fraud case." *Ladenburg Thalmann & Co. v. Imaging Diagnostic Sys., Inc.*, 176 F. Supp. 2d 199, 207 (S.D.N.Y. 2001); *see also Koch v. Greenberg*, No. 07-cv-9600 (BSJ), 2008 WL 4778813, at *5 (S.D.N.Y. Oct. 31, 2008); *Kelly v. Defoe Corp.*, 636 N.Y.S.2d 123, 124 (App. Div. 2d Dep't 1996). "Punitive damages may only be recovered in a fraud action where the fraud is aimed at the public generally, is gross, and involves high moral culpability." *Kelly*, 636 N.Y.S.2d at 124 (citing *Walker v. Sheldon*, 10 N.Y.2d 401, 405 (1961)).[5] The "misconduct must be egregious" and "characterized as 'gross' and 'morally reprehensible,'" or involve "such wanton dishonesty as to imply a criminal indifference to civil obligations." *Ladenburg*, 176 F. Supp. at 207 (internal citation and quotation marks omitted).

The gravamen of Plaintiffs' Complaint is that Richmond Capital misrepresented to them the nature of the funding deal and charged them brokerage fees that Plaintiffs did not expect. Plaintiffs rely upon Richmond Capital's alleged attempt "to lull Plaintiffs into acquiescence by promising over and over again that the $60,000 would be refunded" as evidence of willful conduct. (Opp'n and Mot. to Amend at 6–7.) However, these allegations amount to no more than ordinary fraud and there is nothing "willful and wanton, outrageously immoral, or criminal as to warrant an award of punitive damages." *Kelly*, 636 N.Y.S.2d at 124; *Ball v. Cook*, No. 11-cv-5926 (RJS), 2012 WL 4841735, at *12 (S.D.N.Y. Oct. 9, 2012) (defendant's conduct was egregious because he "stole Plaintiff's artwork, valued in the millions of dollars, and acted with complete disregard

---

[5] Relying on *Ostano Commerzanstalt v. Telewide Sys.*, 880 F.2d 642, 649 (2d Cir. 1989), Plaintiffs argue that "[i]n fraud cases, willful fraudulent conduct will support punitive damages *whether or not directed at the public generally*." (Opp'n and Mot. to Amend at 6 (emphasis added).) However, "*Ostano* no longer reflects New York law." *Baxter Diagnostics, Inc. v. Novatek Med., Inc.*, No. 94-cv-5220 (AJP), 1998 WL 665138, at *2 (S.D.N.Y. Sept. 25, 1998) Since *Ostano* was decided, the "New York Court of Appeals in *Rocanova* clearly explained that fraud arising from a contractual relationship must be directed at the public generally for punitive damages to be awarded[.]" *Id.* (citing *Rocanova v. Equitable Life Assurance Soc'y*, 83 N.Y.2d 603, 613 (1994)).

6

of Plaintiff's rights."); *Linkers (Far East) Pte., Ltd. v. Int'l Polymers, Inc.*, No. 94-cv-9226 (SS), 1996 WL 412854, at *4 (S.D.N.Y. July 23, 1996) (finding defendants exhibited "moral culpability" by perpetrating "gross, wanton, [and] willful fraud" in selling worthless scrap to plaintiff); *cf. Kelly*, 636 N.Y.S.2d at 124 (finding plaintiff's allegation that defendant made fraudulent misrepresentations which induced her to accept employment with defendant insufficient to warrant punitive damages).

Similarly, Plaintiffs' allegations of fraud aimed at the public fail. "In articulating the public aim requirement, New York courts have invoked a distinction between a 'gross and wanton fraud upon the public' on the one hand and 'an isolated transaction incident to an otherwise legitimate business' on the other." *Ball*, 2012 WL 4841735, at *12 (internal citations omitted). Plaintiffs allege that Richmond Capital's "tactics" are not isolated. (Z-Axis Reply in Supp. of Cross-Mot. to Amend, ECF No. 44, at 5.) They rely on an action filed in state court against Richmond Capital and other funders where it is alleged that defendants engaged in funding usurious loans in violation of state law. (*See* Josiah Contarino Verification, Ex. A, ECF No. 45-1, *Paytoo Corp., Michel Poignant v. Richmond Capital, et al.*, No. 654645/2017, Compl. at 2 (Sup. Ct. N.Y. Cnty. July 6, 2017).). Plaintiffs here do not make similar allegations as to Richmond Capital. Moreover, there is no indication that Richmond Capital is running an illegitimate business, making the facts here more akin to an isolated private transaction between businesses, not one that is affecting the public at large. *Cf. Linkers*, 1996 WL 412854, at *5 (defendants' fraud was not an isolated transaction because defendants abused the corporate form and perpetrated similar scams by selling worthless scrap to other victims).

Given that "punitive damages are not available in an ordinary fraud case" *Ladenburg*, 176 F. Supp. 2d at 207, such as this one, it is a "'legal certainty' that the amount recoverable" in this

action "does not meet the jurisdictional threshold." *Bernshteyn*, 2006 WL 2516514 at *2 (citation omitted).

## III. CONCLUSION

Richmond Capital's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) is GRANTED. This action is DISMISSED.

Plaintiffs' cross-motion to amend the Complaint is DENIED as any further amendment would be futile.[6]

The Clerk of Court is directed to close the motion at ECF No. 13 and this case, accordingly.

Dated: New York, New York
      February 14, 2018

SO ORDERED.

*George B. Daniels* (signature)

GEORGE B. DANIELS
United States District Judge

---

[6] *See supra* note 4, at 4.